**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-00863-CMA

PHYLLIS MARQUEZ-FLORES,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER AFFIRMING THE DENIAL OF BENEFITS
---

     This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Phyllis Marquez-Flores's applications for disability benefits under Titles II and XVI of the Social Security Act (the "Act"). Jurisdiction is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

     Ms. Marquez-Flores argues that the administrative law judge's ("ALJ") determination that she can perform work that exists in significant numbers is erroneous. (Doc. # 15.) Because the ALJ's used the correct legal standards and his analysis was supported by substantial evidence, the Court rejects Ms. Marquez-Flores's arguments and affirms the decision of the Commissioner.

# I.    BACKGROUND

Ms. Marquez-Flores was 49 years old on April 1, 2014, the alleged onset of her disability.  (Doc. # 11-5 at 138–48.)[1]  Prior to the alleged onset of her disability, she worked for more than a decade as a machine shop supervisor and had more recently completed coursework to become a certified nursing assistant ("CNA").  (Doc. # 11-6 at 172–73; Doc. # 11-2 at 11.)

Ms. Marquez-Flores applied for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Act on September 15, 2014.  (Doc. # 11-5 at 138–48.)  Ms. Marquez-Flores reported that the following physical and mental conditions had limited her ability to work since April 1, 2014: "back injury; neck to shoulder pain; left arm pain; vertigo; bipolar [disorder], [and] PTSD [post-traumatic stress disorder]."  (Doc. # 11-6 at 164.)  An administrator at the regional Social Security Office in Pueblo, Colorado, initially denied both of Ms. Marquez-Flores's applications on December 9, 2014.  (Doc. # 11-3 at 48–75.)  The administrator explained its determination as follows in a notification to Ms. Marquez-Flores:

> Evidence indicates you sought treatment due to shoulder pain and depression.  While you may experience some limitations due to difficulty reaching and depression, your condition is not severe enough to prevent you from working.  After reviewing medical and other evidence, we have determined that you can adjust to other work.  However, you may want to consider less strenuous employment that limits interpersonal contact.

---

[1] All of the exhibits filed at Doc. # 11 constitute the Administrative Record in this matter.  The Court cites to the docket number of the exhibit (e.g., Doc. # 11-5) and the page number assigned in the Administrative Record (e.g., at 138–48.)

(*Id.* at 62.)  Ms. Marquez-Flores, represented by counsel Steven Earl, requested a hearing before an ALJ on January 7, 2015.  (Doc. # 11-4 at 88–89.)

ALJ William Musseman conducted a hearing on November 22, 2016, in Pueblo, Colorado.  (Doc. # 11-2 at 7–21.)  Ms. Marquez-Flores, her representative, and an impartial vocational expert, Bruce Magnuson, were present.  (*Id.* at 7.)  Ms. Marquez-Flores testified about pain in her left shoulder and arm that stemmed from a low-speed car accident years prior, the frequency with which she experienced vertigo, and her recent surgery to address narrowing at the C6-C7 vertebrae in her neck.  (*Id.* at 11–15.)  She described how she experienced PTSD and depression and how prescription medication made "somewhat" of a difference.  (*Id.* at 15–16.)  Finally, Ms. Marquez-Flores explained that she kept up with her own housework, such as preparing her meals, washing her dishes, laundering her clothes, and doing her own grocery shopping, and with her personal hygiene.  (*Id.* at 16–17.)  She stated that on an average day, she mostly "stay[ed] in [her] room . . . listen[ing] to music or watch[ing] TV" and did not have social activities outside of the house she shared with her niece and her niece's two daughters.  (*Id.*)  Mr. Magnuson, the vocational expert, also testified briefly at the hearing.  (*Id.* at 18–20.)  When prompted by the ALJ, Mr. Magnuson stated that an individual of Ms. Marquez-Flores's age, education, and work background and able to do a "full range of light" work would not be able to perform Ms. Marquez-Flores's past work as a machine shop supervisor but could find employment as a storage facility rental clerk, assembler of small products, or cleaner.  (*Id.* at 19–20.)

The ALJ concluded that Ms. Marquez-Flores was not disabled, as defined in the Act, and therefore was not entitled to disability insurance benefits or supplemental security income benefits in a written decision on January 24, 2017 (the "Decision"). (*Id.* at 31–47.) The ALJ's Decision followed the five-step sequential evaluation required by regulation. (*Id.*); *see* 20 C.F.R. § 404.1520(a)(4) (2017).[2] Relevant here, the ALJ determined that Ms. Marquez-Flores had several severe impairments—"degenerative disc disease of the cervical spine; obesity; bipolar disorder; and [PTSD]"—but that these severe impairments, considered singly and cumulatively, did not "meet or medically equal the severity of one of the listed impairments" in the Social Security Administration's Listing of Impairments,[3] *see* 20 C.F.R. § 414.1520(d). (Doc. # 11-2 at 36–37.) The ALJ next found that Ms. Marquez-Flores had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[4] and 416.967(b) except that claimant can:

---

[2] All citations to the Code of Federal Regulations ("C.F.R.") in this Order are to the 2017 edition of Part 404 of Title 20 of the Code, which governs Title II claims for disability insurance benefits. Parallel citations governing Title XVI claims for supplemental security income are nearly identical and are found at Part 416 of Title 20, 20 C.F.R. §§ 416.101, *et seq*.

[3] The listings "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). Because the ALJ issued his decision on January 24, 2017, the Court cites to the listings in effect in January 2017.

[4] The pertinent regulation defines "light work" as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary

occasionally do overhead chest level work; frequently turn/flex neck, and frequently handler/finger. The claimant requires no complex/unskilled tasks, SVP 2[5] or less. She can occasionally deal with the general public and coworkers.

(*Id.* at 39.) Finally, based on the vocational expert's testimony, the ALJ decided that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform." (*Id.* at 42.) Accordingly, the ALJ concluded that Ms. Marquez-Flores "ha[d] not been under a disability, as defined in the Social Security Act, from April 1, 2014, through the date of this decision [January 27, 2017]." (*Id.* at 43.)

On March 13, 2017, Ms. Marquez-Flores requested that the Appeals Council review the ALJ's decision. (Doc. # 11-4 at 135–37.) The Appeals Council denied Ms. Marquez-Flores's request for review on February 8, 2018, briefly stating that it "found no reason under [its] rules to review the Administrative Law Judge's decision." (Doc. # 11-2 at 1–6.) When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981; *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

---

work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b) (2017).
[5] "SVP level" refers to a Specific Vocational Preparation level. SVP "means the amount of lapsed time required by a typical worker to learn the technique, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." 20 C.F.R. § 656.3 (2017). An SVP of two "means it would require 'anything beyond a short demonstration up to and including 30 days' for 'a typical worker to learn' how to perform the job." *Sasich v. Colvin*, No. 15-461-JWD-RLB, 2016 WL 7826808, *7 (M.D. La. Nov. 14, 2016) (quoting 20 C.F.R. § 656.3).

Ms. Marquez-Flores initiated the instant action on April 12, 2018, seeking reversal of the ALJ's Decision and the award of Social Security benefits to her.[6]  (Doc. # 1.)  After the Commissioner filed the Administrative Record, *see* (Doc. ## 11–11-12), Ms. Marquez filed her Opening Brief on July 19, 2018 (Doc. # 15).  The Commissioner filed a Response on August 7, 2018.  (Doc. # 16.)

## II.  <u>STANDARD OF REVIEW</u>

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards."  *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g).

First, the Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938).  "Substantial evidence is more than a scintilla, but less than a preponderance . . . ."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).  In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's."  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted).  Also, the Court "defer[s] to the ALJ on

---

[6] Ms. Marquez-Flores is represented in the instant appeal by counsel Teresa H. Abbott.

matters involving the credibility of witnesses." *Glass*, 43 F.3d at 1395. "A finding of '"no substantial evidence" will be only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Second, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.   LAW

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A) (2017).  The Act further provides that

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy. . . .

42 U.S.C. § 423(d)(2)(A) (2017).  The claimant bears the burden of proving that she is disabled.  20 C.F.R. § 404.1512(a) (2017); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4) (2017).  The steps of the evaluation are whether: (1) the claimant is currently working; (2) the claimant has a severe impairment; (3) the claimant's impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) the impairment precludes the claimant from doing her past relevant work; and (5) the impairment precludes the claimant from doing any work.  *Id.*; *Williams v. Bowen*, 844 F.3d 748, 750–51 (10th Cir. 1988).  A finding that a claimant is or is not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991).

## IV. ANALYSIS

Ms. Marquez-Flores argues on appeal that the ALJ erred in three ways: (1) the

ALJ's findings were not supported by substantial evidence because the ALJ "failed in

his duty to develop the record;" (2) the ALJ's assessment of her RFC was riddled with

errors; and (3) the ALJ's reliance on the vocational expert's testimony was

unreasonable. (Doc. # 15.) The Court rejects each argument in turn.

### A. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDINGS

Ms. Marquez-Flores first argues that the ALJ's findings as to her "nonexertional

manipulative limitations" are not supported by substantial evidence. (*Id*. at 1.[7])

Specifically, she takes issue with the ALJ's purported reliance on a post-operative report

by her surgeon, Dr. Keith A. Norvill, D.O. (*Id*. at 1–2.) She contends that "Dr. Norvill's

discharge summary did not address post-operative physical restrictions" and that the

ALJ did not "explain how those medical findings, which were recorded shortly after

surgery and while [she] was still in the hospital, correlated to functional abilities, such as

reaching, handling, and fingering." (*Id*.) She also faults the ALJ for "rel[ying] on an

absence of evidence" from after her surgery. (*Id*. at 2.) Ms. Marquez-Flores argues that

the ALJ was "aware that relevant medical evidence" regarding her post-operative

abilities existed but "failed in his duty to develop the record." (*Id*. at 3.) The ALJ, she

asserts, did not ask her at the hearing "any questions about the surgery, her

subsequent treatment, how she convalesced over the past few weeks, or any residual

---

[7] When citing to Ms. Marquez-Flores's Opening Brief, the Court uses the pagination she used at the bottom-center of each page of the brief, though her numbering does not reflect the actual page number of the brief.

problems," nor did he obtain additional medical records, "exercise his options to seek an opinion from Dr. Norvill, or send Ms. Marquez-Flores for a consultative orthopedic examination." (*Id.*) Ms. Marquez-Flores contends that, as a result of the ALJ's failure to develop the record, his conclusions regarding her "nonexertional manipulative limitation[s]" were not supported by substantial evidence. (*Id.*)

The Court infers that Ms. Marquez-Flores's first argument concerns the ALJ's assessment of her medical records for purposes of determining her RFC. After reviewing Ms. Marquez-Flores's symptoms and "objective medical and other evidence" from 2014 and 2015, the ALJ summarized the 2016 surgery to reduce Ms. Marquez-Flores's "increasing left upper extremity pain" and her recovery therefrom:

> In October 2016, an anterior cervical discectomy and fusion was performed due to the claimant's reports of increasing left upper extremity and imaging that showed left lateral recess narrowing at C6-C7. After surgery, the surgeon [Dr. Norvill] found that the claimant was performing her activities of daily living. Her muscle strength handgrip was 4/5 without sensory changes bilaterally. She had muscular tenderness of the posterior lateral left side of the neck, which radiated down her trapezius. She was scheduled for physical therapy. Therefore, the record does not contain any evidence that the surgery was not successful or that the claimant's symptoms did not remain or improve or at least remain stable.

(Doc. # 11-2 at 40.) With regard to Ms. Marquez-Flores's physical limitations, the ALJ determined that she had the RFC "to perform light work . . . except . . . can occasionally do overhead chest level work; frequently turn/flex neck; and frequently handler/finger." (*Id.* at 39.)

### 1. Applicable statutory and regulatory authority

In a social security disability case, the claimant bears the burden to prove her disability. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). "Disability

hearings are nonadversarial, however, and the ALJ has a duty 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting *Hawkins*, 113 F.3d at 1164). "This duty to develop the record pertains even if the claimant is represented by counsel." *Id.* (quoting *Thompson*, 987 F.2d at 1492). Specifically, the Social Security Act requires an ALJ to:

> [D]evelop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination, the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make such determination.

42 U.S.C. § 423(d)(5)(B) (2017). Regulations clarify this statutory duty; 20 C.F.R. § 404.1512(b)(1) provides that "[b]efore [the Social Security Administration] make[s] a determination that [the claimant is] not disabled, [it] will develop [the claimant's] complete medical history" and "will make every reasonable effort to help [the claimant] get medical evidence from [its] own medical sources." In short, "an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004)).

However, "an ALJ's duty to develop the record is **not** unqualified." *Wall*, 561 F.3d at 1063. The Court of Appeals for the Tenth Circuit has explained that "[s]everal preconditions inform an ALJ's duty to develop the administrative record." *Id.* (citing, *e.g.*, *Flaherty*, 515 F.3d at 1071). The ALJ "may reasonably rely on 'counsel to identify the issue or issues requiring further development.'" *Id.* (quoting *Branum*, 385 F.3d at

1271). "Moreover, a claimant need not only 'raise' the issue she seeks to develop, but that issue must also be 'substantial' 'on its face.'" *Id.* (quoting *Hawkins*, 113 F.3d at 1167). "Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* (quoting *Flaherty*, 515 F.3d at 1071).

    2.   <u>Analysis</u>

The Court is satisfied that the ALJ fulfilled his duty to develop the record consistent with the issues raised by Ms. Marquez-Flores. At the outset of the hearing on November 22, 2016, the ALJ asked Ms. Marquez-Flores's attorney if she had "any objections to the exhibits," to which counsel replied that medical records from her most recent surgery, the cervical surgery performed one month prior, were not yet available. (Doc. # 11-2 at 9.) The ALJ responded, "Anything that is submitted prior to the decision going out will be added to the record." (*Id.*) At some point after the hearing, Ms. Marquez-Flores submitted medical records pertaining to her October 2016 surgery. *See* (Doc. # 11-12 at 573–93.) The ALJ explicitly discussed these records in his Decision. (Doc. # 11-2 at 40.) Thus, to the extent that Ms. Marquez-Flores's counsel brought gaps in the record related to the October 2016 surgery to the ALJ's attention at the hearing, the ALJ adequately developed Ms. Marquez-Flores's complete medical history by addressing the later-submitted medical records related to the surgery in his Decision.

The Court rejects Ms. Marquez-Flores's argument that the ALJ was "aware the relevant medical evidence" regarding her post-operative abilities existed but "failed in

his duty to develop the record." (Doc. # 15 at 3.) Ms. Marquez-Flores leaves this Court in the dark by failing to identify this "relevant medical evidence." If she is referring merely to records of her surgery and ensuing hospital stay, the Court explained in the preceding paragraph that the ALJ adequately considered those records and the extent to which they addressed to her physical abilities after the surgery. *See* (Doc. # 11-2 at 40) ("After surgery, the surgeon found that the claimant was performing her activities of daily living"). To the extent she is contending that the ALJ failed to obtain **additional** existing records, the Court assumes she is referring to physical therapy records from after her surgery. However, there was no evidence before the ALJ that Ms. Marquez-Flores had actually received physical therapy after the operation. Ms. Marquez-Flores did not testify about physical therapy, nor did her counsel state at the hearing that physical therapy records were missing from the record. All the ALJ knew from the record was that her surgeon had noted upon her discharge from the hospital that "[o]utpatient physical therapy will be arranged." (Doc. # 11-12 at 590.) The surgeon's note was insufficient to give rise to a duty on the ALJ to seek out physical therapy records from after Ms. Marquez-Flores's surgery. *See* (Doc. # 16 at 6–7.)

More broadly, the Court is also satisfied that the ALJ's findings regarding Ms. Marquez-Flores's "nonexertional manipulation limitations" were supported by substantial evidence. *See* (Doc. # 15 at 3.) As the Court already stated, the ALJ found that with respect to such limitations, Ms. Marquez-Flores was capable of performing "light work" "except that the claimant can: occasionally do overhead chest level work; frequently turn/flex neck; and frequently handler/finger." (Doc. # 11-2 at 39.) Substantial evidence

supported these findings, including Ms. Marquez-Flores's testimony during the hearing and the post-surgical medical report by her surgeon. *See* (*id*. at 12 ("Q. What about grasping objects with your left hand, do you have any difficulty with that? A: At times.")); (Doc. # 11-12 at 589 ("She states that her left upper extremity radicular arm symptoms have greatly improved postoperatively. . . . She is ambulating and performing her activities of daily living.")).

For these reasons, the Court rejects Ms. Marquez-Flores's first argument that the ALJ erred by failing to develop the record and relying on Dr. Norvill's post-operative treatment notes. The Court finds that the ALJ's findings regarding Ms. Marquez-Flores' "nonexertional manipulative limitations" were supported by substantial evidence.

## B. THE ALJ REASONABLY ASSESSED MS. MARQUEZ-FLORES'S RFC

As the Court recounted above, the ALJ assessed RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that claimant can: occasionally do overhead chest level work; frequently turn/flex neck, and frequently handler/finger. The claimant requires no complex/unskilled tasks, SVP 2 or less. She can occasionally deal with the general public and coworkers.

(Doc. # 11-2 at 39.) Ms. Marquez-Flores raises several brief, overlapping arguments regarding the ALJ's RFC assessment. (Doc. # 15 at 4–11.) The Court endeavors to disentangle Ms. Marquez-Flores's assertions and rejects each in turn.

### 1. Statutory and regulatory guidance on RFC assessments generally

The fourth step of the five-step sequential evaluation process requires the Commissioner to assess the claimant's residual functional capacity "to perform . . . work

in the national economy in view of [the claimant's] age, education, and work," *Williams*, 844 F.3d at 751, and "based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(e). RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1) (2017); SSR 96-8, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 FR 34474-01 (1996). 20 C.F.R. § 404.1545 and Social Security Ruling 96-8p detail how the Commissioner must consider a claimant's physical abilities and mental abilities and the total limiting effects of all his or her impairments.

2. The combined effect of Ms. Marquez-Flores's impairments

Ms. Marquez-Flores argues that the ALJ's RFC was "not supported by substantial evidence because it [did] not reflect proper consideration of the combined effect of all of [her] impairments." (Doc. # 15 at 4.) She alleges that she had "other medically determinable physical and psychological impairments" that were "inextricably intertwined" with her "cervical spine problems," such as fibromyalgia, multiple somatic dysfunction, an ulcerative infection in her right leg, chronic pain disorder, and obesity. (*Id.* at 4–6.) She faults the ALJ for making "only cursory references" to exhibits in her medical record that that discussed these impairments. (*Id.* at 4.)

The Commissioner must "consider the limiting effects of **all** [a claimant's] impairment(s), even those that are not severe," in determining the claimant's RFC. 20 C.F.R. § 404.1545(e) (2017) (emphasis added). Social Security Ruling 96-8p explains:

> While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed

by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8, 61 FR 34474-01.

In this case, the Court is satisfied that the ALJ adequately considered the limiting effects of all Ms. Marquez-Flores's impairments for two reasons. First, the ALJ explicitly stated that he assessed Ms. Marquez-Flores's RFC "based on all the evidence with consideration of the limitations and restrictions imposed by the **combined effects of all the claimant's medically determinable impairments**." (Doc. # 11-2 at 39) (emphasis added). "Our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Flaherty*, 515 F.3d at 1071 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)) (in the context of evaluating an ALJ's statement that he had considered all the claimant's symptoms, noting practice to take lower tribunal at its word).

Second, the ALJ's discussion of the medical record and his reasons for his conclusions demonstrate that he considered all Ms. Marquez-Flores's medically determinable impairments. For example, the ALJ explicitly considered Ms. Marquez-Flores's obesity:

> In addition, the record reveals the claimant is obese, at five feet, eight inches in height, and an average weight of 240 pounds, which equates to a body mass index (BMI) of 36.5. (Exh. 12F [Doc. # 11-11]). The undersigned has considered Social Security Ruling 02-01, which discusses the effect of obesity alone, or in combination with any other impairment, on an individual's ability to perform work activities. The undersigned finds that in this instance, the claimant's obesity exacerbates her degenerative disc disease, and limits her ability to perform routine movement and necessary physical activity within a work environment.

(Doc. # 11-2 at 41.) To the extent that Ms. Marquez-Flores rejects as "not legitimate" the ALJ's assessment of how obesity affected her ability to perform basic work activities, the "limited scope of review precludes this [C]ourt from reweighing the evidence or substituting [its] judgment for that of the Commissioner." *Flaherty*, 515 F.3d at 1071 (quoting *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.3d 1495, 1500 (10th Cir. 1992)). As long as substantial evidence supports the ALJ's determination, the ALJ's decision stands. *Id.*

Substantial evidence supported the ALJ's assessment of Ms. Marquez-Flores's RFC, and his analysis demonstrated that he made that assessment based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all Ms. Marquez-Flores' medically determinable impairments. *See* (Doc. # 11-2 at 39.) The Court, therefore, rejects Ms. Marquez-Flores's argument that the RFC determination was based on legal error and not supported by substantial evidence because it did not reflect proper consideration of the combined effect of all of Ms. Marquez-Flores's impairments.

3. Ms. Marquez-Flores's subjective allegations of physical pain

Ms. Marquez-Flores next argues that the ALJ's RFC determination "is based on legal error and not supported by substantial evidence because the ALJ failed to properly evaluate [her] subjective allegations" of pain—in other words, her symptoms.[8] (Doc. # 15 at 6–10.) She recounts her testimony to the ALJ about her experiences with pain,

---

[8] "Symptoms" mean the claimant's "own description of [his or her] physical or mental impairment." 20 C.F.R. § 404.1502(i).

her "difficulty attending to her personal care," and her "daily living activities," and states that her symptoms "did not establish that she was able to perform work on a sustained basis." (*Id.* at 8–9.)

The Court observes at the outset that Ms. Marquez-Flores's statement of the applicable rules, *see* (*id.* at 6), is, at best, outdated. She cites to cases from the Tenth Circuit that predate the Social Security Administration's promulgation of Social Security Ruling 16-3p and 20 C.F.R. § 404.1529, and these older cases do not articulate the rules in place at the time the ALJ issued his decision in this case. *See* (Doc. # 15 at 6) (citing, *e.g.*, *Luna v. Bowen*, 834 F.2d 161, 162 (10th Cir. 1987)). In light of the Social Security Administration's promulgation of Ruling 16-3p and accompanying regulations, the Court disregards Ms. Marquez-Flores's statement of the applicable rules and looks instead to authority issued on or after the promulgation of Ruling 16-3p.

In determining whether a claimant is disabled, the Commissioner must "consider all [the claimant's] symptoms, including pain." 20 C.F.R. § 404.1429(a) (2017). To do so, the Commissioner evaluates symptoms "using a two-step process" set forth in 20 C.F.R. § 404.1429. SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, *2 (2016). At the first step, the Commissioner "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the claimant's] symptoms, such as pain." *Id.* If that is established, the Commissioner at the second step "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In

evaluating the intensity and persistence of the claimant's symptoms, the Commissioner "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The Court concludes that the ALJ did not commit legal error in his evaluation of Ms. Marquez-Flores's physical symptoms.  The ALJ explained the two-step inquiry to evaluate symptoms, and at its first step, wrote that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms."  (Doc. # 11-2 at 39–40.)  After a detailed review of medical record evidence related to Ms. Marquez-Flores's complaints of left shoulder, neck, and back pain, the ALJ concluded at the second step that "the evidence in the record, considered as a whole, is not consistent with the claimant's allegations of total disability."  (*Id.* at 41.)  The ALJ thereby used the correct legal standards to evaluate Ms. Marquez-Flores's complaints of pain.

The Court is also satisfied that the ALJ's evaluation of Ms. Marquez-Flores's physical symptoms is supported by substantial evidence—specifically, objective medical evidence that is inconsistent with Ms. Marquez-Flores's claims of total disability.  The ALJ described objective medical evidence dating back to May 2014 in his Decision.  (Id. at 40–41.)  For example, with regard to Ms. Marquez-Flores's left shoulder, arm, and neck pain, the ALJ considered the most recent objective medical evaluation, conducted by Ms. Marquez-Flores's surgeon after the October 2016 surgery:

> After surgery, the surgeon found that the claimant was **performing her activities of daily living**. Her muscle strength handgrip was 4/5 without sensory changes bilaterally. She had muscular tenderness of the posterior lateral left side of the neck, which radiated down her trapezius. She was scheduled for physical therapy.

(*Id.* at 40) (emphasis added); *see* (Doc. # 11-12 at 590.) It is not the place of this Court to reweigh such objective medical evidence, as Ms. Marquez-Flores implies it should. *See Glass*, 43 F.3d at 1395. In sum, the Court is unpersuaded that the ALJ "failed to properly evaluate" Ms. Marquez-Flores's complaints of physical pain.

4.  Ms. Marquez-Flores's subjective allegations of mental limitations

Ms. Marquez-Flores also asserts that the ALJ "failed to properly evaluate" her statements about her mental impairments and erred by determining that she had the RFC to "occasionally deal with the general public and coworkers." (Doc. # 15 at 6–11.) The Court discerns two arguments regarding the ALJ's conclusion that "[t]he medical evidence of record relative to claimant's alleged bipolar disorder, anxiety disorder, and PTSD do not support a finding of total disability," neither of which persuades the Court that the ALJ failed to apply the correct legal standard or that his RFC with respect to Ms. Marquez's mental limitations was not supported by substantial evidence.

First, Ms. Marquez-Flores faults the ALJ's determination that she had "only moderate limitation interacting with others"[9] on the grounds that "Ms. St. John's [her one-time therapist's] records painted a different picture." (*Id.* at 10.) However, Ms. St. John's notes conflict with other evidence in the record, including evidence that Ms.

---

[9] More precisely, the ALJ actually determined that Ms. Marquez-Flores had the RFC to "occasionally deal with the general public and coworkers." (Doc. # 11-2 at 39.)

Marquez-Flores completed training to be a CNA and engaged in activities that required social interaction. As such, Ms. Marquez-Flores fails to show that the ALJ's resolution of the conflicts was unreasonable.  The Court is satisfied that the ALJ's finding that Ms. Marquez-Flores had the RFC to "occasionally deal with the general public and coworkers" was supported by substantial evidence.  *See* (Doc. # 11-2 at 39.)  The Court "may not displace the agency's choice between two fairly conflicting views," even if it would have made a different determination regarding Ms. Marquez-Flores's capacity to interact with others.  *See Lax*, 489 F.3d at 1084.

Second, Ms. Marquez-Flores criticizes the ALJ for "[giving] 'great weight' to the state agency psychologist Dr. Suyeishi's opinion" but "not accept[ing] the [sic] Dr. Suyeishi's opinion that Ms. Marquez-Flores had a social limitation of 'minimal to no interaction with the general public.'"[10]  (Doc. # 15 at 10.)  This argument also fails to persuade the Court that the ALJ's determination that Ms. Marquez-Flores had the RFC to "occasionally deal with the general public" was unsupported in the record.  *See* (Doc. # 11-2 at 39.)  The Court observes that Dr. Suyeishi's opinions were inconsistent; he elsewhere stated that Ms. Marquez-Flores's "ability to interact appropriate with the general public" was just "[m]oderately limited" (Doc. # 11-3 at 73), which indisputably supported the ALJ's determination that Ms. Marquez-Flores was capable of occasionally

---

[10] Ms. Marquez-Flores presumably is referring to Dr. Suyeishi's statement in the Administration's initial disability determination explanation that:

> Clmt can make complex decisions, work with abstract ideas and make independent judgments but cannot work closely with supervisors or coworkers; can accept supervision and relate to coworkers if contact is not frequent or prolonged; must have minimal to no interaction with the general public.

(Doc. # 11-3 at 73.)

interacting with the general public and coworkers (Doc. # 11-2 at 39). Moreover, the ALJ explicitly acknowledged Dr. Suyeishi's opinion that Ms. Marquez-Flores "must have minimal to no interaction with the general public," and he assigned Dr. Suyeishi's opinion "great weight." (*Id.* at 41.) The ALJ explained, however, that Dr. Suyeishi had proferred his opinion more than two years earlier and that Ms. Marquez-Flores had since "submitted additional mental health records." (*Id.*) The Court may not now reweigh the evidence—including Dr. Suyeishi's opinion and medical records submitted subsequent to that—nor substitute its judgment for the ALJ's judgment. *See Glass*, 43 F.3d at 1395.

For these reasons, the Court affirms the ALJ's assessment of Ms. Marquez-Flores's RFC.

## C. THE ALJ REASONABLY RELIED ON THE VOCATIONAL EXPERT'S TESTIMONY

Ms. Marquez-Flores's final argument is that "[s]ubstantial evidence [did] not support the ALJ's reliance on the [vocational expert's] testimony." (Doc. # 15 at 11.) She contends that the Commissioner therefore "failed to meet her burden of showing that jobs exist in significant numbers that Ms. Marquez-Flores could perform." (*Id.*) The Court disagrees.

Ms. Marquez-Flores argues that the ALJ's assessment of her RFC to occasionally deal with the general public and coworkers "[was] inconsistent with one of the jobs the ALJ relied on"—"the job of storage facility rental clerk," which "requires 'frequent' talking and hearing, i.e., frequent interaction with others." (*Id.* at 12.) Assuming arguendo that Ms. Marquez-Flores is correct, any error by the ALJ in relying

on the rental clerk job was harmless. Excluding the rental clerk positions, the ALJ found that there were still more than 4,076 other jobs in Colorado alone that Ms. Marquez-Flores was able to perform: 1,510 positions as a small products assembler and 2,566 positions as a cleaner. (Doc. # 11-2 at 43.) The Court is satisfied that this represented a significant number of jobs available to Ms. Marquez-Flores. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (assuming two of the three jobs the ALJ relief on at the fifth step of analysis were erroneous, nonetheless affirming the ALJ's decision that substantial evidence showed the claimant could do the third job and that the third job existed in significant numbers in the national economy). Accordingly, the ALJ's partial reliance on Ms. Marquez-Flores's ability to work as a storage facility rental clerk was harmless error.

Ms. Marquez-Flores's also argues that the ALJ's assessment of her RFC to only "occasionally do overhead chest level work" was inconsistent with the ALJ's reliance on her capability to work as a rental clerk, small products assembler, and cleaner—positions which "require 'frequent' reaching" according to the Dictionary of Occupational Titles ("DOT"). (Doc. # 15 at 13.) This too fails to persuade the Court that reversal of the ALJ's conclusion is warranted. The DOT's descriptions of the three jobs do not distinguish between overhead reaching and reaching in other directions, as Ms. Marquez-Flores acknowledges. (*Id.*) In considering an argument in *Segovia v. Astrue* nearly identical to Ms. Marquez-Flores's argument, where the claimant's RFC was limited to "occasional overhead reaching," the Tenth Circuit held that substantial evidence supported the Commissioner's decision that the claimant could work as a

ticket-taker or a cafeteria attendant, positions that required "frequent reaching." 226 F.

App'x 801, 805 (10th Cir. 2007). The Tenth Circuit explained:

> [E]ven a job requiring frequent reaching does not necessarily require more than occasional **overheard** reaching. The [vocational expert] was aware of the claimant's limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. In these circumstances, the [vocational expert's] testimony does not conflict with the DOT . . . so much as it clarifies how [its] broad categorizations apply to this specific case.

*Id*. (citing *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is

any implied or indirect conflict between the vocational expert's testimony and the *DOT* in

this case, the ALJ may rely upon the vocational expert's testimony provided that the

record reflects an adequate basis for doing so. [A]ll kinds of implicit conflicts are

possible and the categorical requirements listed in the DOT do not and cannot

satisfactorily answer every such situation.")) The Tenth Circuit's holding is fatal to Ms.

Marquez-Flores's argument.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court AFFIRMS the Final Decision of the

Commissioner of Social Security.


DATED:  April 18, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge